DOWD, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Arindus Humphrey, | ) | |
| | ) | CASE NO. 3:04CV7748 |
| Petitioner, | ) | |
| | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | (Resolving Doc. No. 1) |
| United States of America, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

## I. Introduction

Petitioner Arindus Humphrey has filed his Motion to Set Aside, Correct, or Vacate Sentence pursuant to 28 U.S.C. § 2255 (Doc. No. 1). Humphrey asks the Court to correct or vacate his sentence for three reasons: (1) his sentence was unconstitutionally enhanced based on <u>Blakely v. Washington</u>, 542 U.S. 296 (2004), which asserts a claim based on <u>United States v. Booker</u>, - - - U.S. - - -, 125 S. Ct. 738 (2005); (2) he received ineffective assistance of counsel because his trial attorney misadvised him to reject the Government's plea offer; and (3) he received ineffective assistance of counsel because his attorney did not inform him of his right to testify at trial. The Respondent United States of America (the Government) filed a response (Doc. No. 6), and Humphrey filed a reply (Doc. No. 13).

The Court concluded that an evidentiary hearing on Humphrey's decision to reject the plea offer was appropriate in light of <u>United States v. DaBelko</u>, 154 F. Supp. 2d 1156 (N.D. Ohio 2000). (Doc. No. 7.) Accordingly, the Court conducted an evidentiary hearing on May 13, 2005, where the

(3:04CV7748)

Court heard testimony from Humphrey and his trial counsel Mr. James Van Dielen. (Doc. No. 16.) Humphrey and his counsel then each filed supplemental briefs in support of his Petition (Doc. Nos. 21, 26), and the Government filed a supplemental brief opposing the Petition (Doc. No. 25).

Because Booker/Blakely claims do not apply retroactively in § 2255 proceedings and because Humphrey has not shown that his counsel's performance was constitutionally deficient, his Motion is DENIED.

## II. Sentence Enhancement

Humphrey argues that his sentence was unconstitutionally enhanced under the Sentencing Guidelines by facts not decided by a jury. In United States v. Booker, - - - U.S. - - -, 125 S.Ct. 738 (2005), the Supreme Court held "that the Sixth Amendment as construed in Blakely v. Washington, 542 U.S. 296 (2004), does apply to sentencing pursuant to the Guidelines." United States v. Webb, 403 F.3d 373, 380 (6th Cir. 2005). "Thus, Booker made applicable to the Guidelines the Supreme Court's past holding that '[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt' or else the Sixth Amendment is violated." Id. at 380-81 (quoting Booker, - - - U.S. at - - -, 125 S.Ct. at 756). As a remedy, the Supreme Court "sever[ed] the statutory provisions that make the Guidelines mandatory in nature, thereby rendering the Guidelines 'effectively advisory.'" Id. at 381 (citing Booker, - - - U.S. at - - -, 125 S.Ct. 738, 757.)

However, "Booker's rule does not apply retroactively in collateral proceedings." Humphress

2

(3:04CV7748)

v. United States, 398 F.3d 855, 860 (6th Cir. 2005). In Humphress, the Sixth Circuit held that a petitioner's claim in a § 2255 petition that his sentence was imposed in violation of Blakely and, thereby, Booker, was "meritless" because "[t]he Booker rule is clearly new." Id. at 860-61. In reaching the conclusion that the petitioner's claim was meritless, the court first noted that "[g]enerally speaking, federal habeas corpus petitioners may not rely on new rules of criminal procedure handed down after their convictions have become final on direct appeal." Id. at 860 (citing Schriro v. Summerlin, - - - U.S. - - -, 124 S.Ct. 2519, 2253 (2004)). The court then determined that the petitioner's conviction had become final prior to the Supreme Court's decision in Booker. The court then concluded that "[t]he Booker rule is clearly new[ because i]t was not dictated by precedent existing at the time that [the petitioner's] conviction became final, and it would not have been apparent to 'all reasonable jurists' that his conviction was unlawful." Id. at 861. The court, therefore, concluded that the petitioner could not assert a Blakely/Booker claim in his habeas corpus petition, and affirmed the district court's dismissal of the petition. Id. at 861-63.

Here, Humphrey, like the petitioner in Humphress, also asserts a Blakely/Booker claim in his § 2255 habeas corpus petition. Humphrey's conviction was finalized at the latest on December 15, 2003, the date the court received the letter indicating that Humphrey's final petition for a writ of certiorari had been denied. The Supreme Court announced its decision in Booker on January 12, 2005. Thus, Humphrey's conviction became final prior to Booker. Furthermore, as the Sixth Circuit held in Humphress, the Booker rule is new. Like the petitioner's claim in Humphress, therefore, Humphrey's claim is meritless, and, consequently, is dismissed.

3


(3:04CV7748)

### III. Ineffective Assistance of Counsel

Humphrey also argues that he was denied the effective assistance of counsel. To establish an ineffective assistance of counsel claim, a defendant must show (1) "that counsel's performance was deficient" and (2) "that the deficient performance prejudiced the defense[, *i.e.*,] that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland v. Washington, 446 U.S. 668, 687 (1984). If a defendant does not make both showings, the conviction shall not be reversed. Id.

Demonstrating that counsel's performance was deficient requires showing "that counsel's representation fell below an objective standard of reasonableness" Id. at 688. Furthermore, "any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution." Id. at 692. To demonstrate that counsel's deficient performance prejudiced the defense, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.

Here, Humphrey argues that his trial counsel, Van Dielen, was constitutionally ineffective in two ways. First, Humphrey argues that Van Dielen was constitutionally deficient because he misadvised Humphrey to reject a plea agreement. Second Humphrey argues that Van Dielen was constitutionally deficient because he did not inform Humphrey of his right to testify at trial.

### A. The Plea Agreement

The Court first will address whether Van Dielen's advice regarding the plea agreement was

(3:04CV7748)

constitutionally deficient. To establish that counsel's advice regarding a plea offer was constitutionally ineffective, "a petitioner must prove both deficient performance on the part of his counsel and that, but for his counsel's advice, there is a reasonable probability that he would have pleaded guilty." Magana v. Hofbauer, 263 F.3d 542, 548 (6th Cir. 2001) (citing Turner v. Tennessee, 858 F.2d 1201, 1206 (6th Cir. 1988)). "A criminal defendant has a right to expect at least that his attorney will review the charges with him by explaining the elements necessary for the government to secure a conviction, discuss the evidence as it bears on those elements, and explain the sentencing exposure the defendant will face as a consequence of exercising each of the options available." Smith v. United States, 348 F.3d 545, 553 (6th Cir. 2003). "Although the attorney may provide an opinion on the strength of the government's case, the likelihood of a successful defense, and the wisdom of a chosen course of action, the ultimate decision of whether to go to trial must be made by the person who will bear the ultimate consequence of a conviction." Id. at 552.

Here, Humphrey asserts that Van Dielen told him that "there's no evidence; all they had was witnesses" and that he could win the case. Van Dielen, contrariwise, testified that he informed Humphrey of all of the evidence he received through discovery from the Government, including knowledge about drugs seized and financial records. Van Dielen also indicated that he discussed with Humphrey witnesses that were going to testify against Humphrey, including a co-defendant and a former girl friend, and that Humphrey did not believe they would testify against him. Van Dielen further testified that he never told Humphrey that he could win the case. Rather, Van Dielen said that, in response to Humphrey's question "If nobody testifies, Jim, how are they going to convict me," he

5

(3:04CV7748)

would reply "if nobody's going to testify against you, there isn't going to be a conviction." The Court further notes that during his testimony Van Dielen repeatedly referred to Humphrey by the nickname "Red " and that Van Dielen was not acquainted with Humphrey prior to his representation of him in the underlying criminal matter. Thus, it is clear that Van Dielen developed a relationship with Humphrey during the course of the representation.

The Court finds Van Dielen more credible and finds that Van Dielen did discuss with Humphrey the nature of the evidence and the Government's case against him. Humphrey's assertion that the Government's witnesses would not testify against him represents Humphrey's refusal to acknowledge the dire circumstances that he faced. A defendant's refusal to acknowledge the strength of the government's case does not render his counsel's performance constitutionally deficient. Humphrey, therefore, has not shown that Van Dielen's performance was constitutionally deficient.

Humphrey also contends that Van Dielen never discussed the sentencing guidelines with him. Humphrey further contends that Van Dielen told him the maximum sentence he could receive is ten years and, as a result, that he should reject the Government's offer of a nine-year sentence in exchange for a guilty plea. Van Dielen testified, conversely, that he told Humphrey that he was facing between 20 and 30 years in prison but still thought that the nine year sentence offer was too high. Van Dielen further indicated that he did not discuss the sentencing guidelines with Humphrey because a potential sentence was not the focus of his representation since Humphrey had no interest in pleading guilty. Indeed, Van Dielen stated that Humphrey became agitated at talk of a guilty plea and viewed a willingness to plead as a sign of weakness. The Court again finds Van Dielen more credible and,

6

(3:04CV7748)

consequently, concludes that Van Dielen did advise Humphrey that he was facing between 20 and 30 years in prison. Furthermore, Van Dielen's representation was not rendered constitutionally deficient by a failure to discuss the sentencing guidelines with Humphrey because of Humphrey's staunch refusal to consider a plea. Humphrey, therefore, has not shown that Van Dielen's advice regarding plea bargaining was constitutionally deficient.

Moreover, the Court finds that regardless of Van Dielen's advice, there is no reasonable probability that Humphrey would have pleaded guilty. On three separate occasions, the United States Magistrate Judge advised Humphrey that the penalty for the offenses with which he was charged was ten years to life in prison and that the estimated guidelines range was 324 to 405 months. Furthermore, Humphrey was insistent on going to trial. Humphrey testified that he told Van Dielen that he wanted to take the nine-year plea offer. Van Dielen, conversely, testified that when he advised Humphrey of the nine-year plea offer, Humphrey perceived it as a sign of weakness and said, "I don't want to talk about pleading. We're going to trial." Van Dielen further testified that, every time he would bring up pleading, Humphrey would become a little upset. (Van Dielen testified that Humphrey did indicate that he would accept a plea bargain in which he was sentenced to one year in prison with credit for time served.) Additionally, Van Dielen testified that he was retained to represent Humphrey after Humphrey's previous attorney suggested that Humphrey plead guilty and that Humphrey indicated to him that Humphrey wanted him to try the case. Van Dielen also stated that Humphrey claimed that some of the Government's witnesses would not testify against him, even after Van Dielen told Humphrey that he had spoken with their counsel and that they indicated the witnesses would testify.

(3:04CV7748)

The Court finds Van Dielen more credible. From this evidence, the Court concludes that Humphrey was insistent on bringing his case to trial and did not even wish to consider a realistic plea agreement. Therefore, regardless of Van Dielen's advice, there is no reasonable probability that Humphrey would have pleaded guilty. Thus Humphrey was not prejudiced by Van Dielen's representation. Consequently, Humphrey's claim of ineffective assistance of counsel regarding a potential plea agreement is meritless.

### B. Right to Testify

Humphrey next contends that Van Dielen never informed him of his right to testify. "The right of a defendant to testify at trial is a constitutional right of fundamental dimension and is subject only to a knowing and voluntary waiver by the defendant." United States v. Walker, No. 99-4105, 2000 WL 1871681, *2 (6th Cir. Dec. 11, 2000) (citing Rock v. Arkansas, 483 U.S. 44, 52, 53 n.10 (1987)). "[L]egal advice concerning exercise of the right to testify does not infringe a defendant's constitutional right to testify." Id. (citing United States v. Teague, 953 F.2d 1525, 1534-35 (11th Cir. 1992) (en banc)). Furthermore, "there is a strong presumption that defense counsel's decisions are guided by sound trial strategy." Id. at *1 (citing Cobb v. Perini, 832 F.2d 342, 347 (6th Cir. 1987)).

At the hearing, Humphrey testified that Van Dielen told him he could testify but advised him that he should not testify. Apparently, Humphrey had prior drug convictions that would have been presented to question his credibility if he had testified. Although Humphrey disagreed with Van Dielen's advice, he deferred to Van Dielen because Van Dielen was his lawyer. Humphrey has presented no evidence suggesting that the decision not to testify was not guided by sound trial strategy.

8

(3:04CV7748)

The Court, therefore, concludes that Van Dielen did inform Humphrey of his right to testify and that the decision not to testify was guided by sound trial strategy. Consequently, Humphrey's ineffective assistance of counsel claim is without merit.[1]

### IV. Conclusion

For the foregoing reasons, Petitioner Arindus Humphrey's Motion to Set Aside, Correct, or Vacate Sentence pursuant to 28 U.S.C. § 2255 (Doc. No. 1) is DENIED.

IT IS SO ORDERED.

  August 16 , 2005                             /s/ David D. Dowd, Jr.
Date                                             David D. Dowd, Jr.
                                                 U.S. District Judge

---

[1] The Court further notes that, during the trial, the trial judge informed Humphrey of his right to testify, and Humphrey represented to the trial judge that he did not wish to testify and it was his decision.

9